UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYDEN OIL COMPANY,

Plaintiff/Counter-Defendant,

v.

THK RHYTHM AUTOMOTIVE MICHIGAN CORPORATION,

Defendant/Counter-Plaintiff,

Case No. 1:26-cv-422

Hon. Hala Y. Jarbou

---

LYDEN OIL COMPANY,

Third-Party Plaintiff,

v.

BATTENFELD-AMERICAN, INC., and BATTENFELD GREASE & OIL CORPORATION OF NEW YORK,

Third-Party Defendants.

---

## OPINION

Lyden Oil Company ("Lyden") sued THK Rhythm Automotive Michigan Corporation ("THK") in 2025 in Michigan state court, bringing several claims against THK related to THK's alleged failure to pay outstanding invoices. THK removed to this court and brought counterclaims, alleging that Lyden had sold THK a grease product that was defective, causing damage to THK's manufacturing operations. Lyden then filed a third-party complaint under Federal Rule of Civil Procedure 14 against the manufacturer of the grease: Battenfeld-American, Inc. and Battenfeld Grease & Oil Corporation of New York (collectively, "Battenfeld"). Lyden's third-party

complaint brings claims of indemnification, contribution, breach of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and promissory estoppel. Battenfeld moves to dismiss the third-party complaint.

## I. Background

Since 2018, Lyden has been selling a type of grease, referred to in the pleadings as "045 #3 grease," (First Am. Third-Party Compl. ¶ 11, ECF No. 33) to THK for THK's manufacturing operations. Battenfeld manufactured the grease. According to the complaint, Lyden would buy the grease from Battenfeld in 400-pound sealed steel drums and keep the drums of grease in its warehouse until THK placed an order. Lyden did not sell the grease to any other customers.

In May 2022, Lyden placed a purchase order with Battenfeld for 79 drums of 045 #3 grease. Following its usual practice, after receiving the drums of grease, Lyden kept the drums in its warehouse and did not open or alter them. That September, THK placed an order for 1,600 pounds of 045 #3 grease from Lyden, which Lyden fulfilled from the May 2022 order.

Later that month, THK notified Lyden that the grease was clogging its lines. Subsequent testing by Battenfeld revealed that the grease contained undissolved soap. Lyden returned 29 drums of the grease to Battenfeld for a refund. Lyden then replaced the allegedly defective grease provided to THK for free.

In 2023, THK notified Lyden that they were claiming damages related to the defective grease. Several months later, THK placed a "credit" on their account with Lyden, claiming that the credit was paying off any outstanding invoices.

Lyden sued THK in Michigan state court in 2025, claiming breach of contract, account stated, and unjust enrichment and seeking $196,743.98 in damages related to unpaid invoices. THK removed the lawsuit to this court and brought counterclaims against THK, claiming breach

of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, account stated, and, in the alternative, promissory estoppel. In its counterclaims, THK alleged that the grease it bought from Lyden was defective because it was contaminated and contained foreign particles, and that it caused significant damage to THK's manufacturing operations.

Lyden then filed its third-party complaint against Battenfeld.

## II. Legal Standard

A claim may be dismissed for failure to state a claim if it fails " 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To determine whether a pleading fails to state a claim, the plaintiff must allege "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.' " *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Analysis

Battenfeld moves to dismiss each of the claims in Lyden's third-party complaint. The Court will discuss each claim in turn.

**A. Lyden's Indemnification Claim**

Common-law indemnity is only available where a party is "held vicariously liable to another through no fault of his own." *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 807 N.W.2d 354, 361 (Mich. Ct. App. 2011) (quoting *Peeples v. Detroit,* 297 N.W.2d 839, 842 (Mich. Ct. App. 1980)). This means that "the party seeking indemnity must be free from active or causal negligence." *Id.* (quoting *Langley v. Harris Corp.*, 321 N.W.2d 662, 665 (Mich. 1982)). "If a party breaches a direct duty owed to another and this breach is the proximate cause of the other party's injury, that is active negligence." *Langley*, 321 N.W.2d at 665. "Where the active negligence is attributable solely to another and the liability arises by operation of law, that is passive negligence." *Id.*

Battenfeld argues that under Michigan law, a defendant/third-party plaintiff cannot bring an indemnification claim against a third-party defendant if the plaintiff in the underlying action has alleged in its primary complaint that the defendant/third-party plaintiff was actively negligent. Here, Battenfeld argues, Lyden's indemnification claim must be dismissed because THK has alleged that Lyden was actively negligent.

Battenfeld's understanding of Michigan law is incorrect. Battenfeld cites language from cases such as *Peeples*, where the Michigan Court of Appeals stated: "In order to determine whether the indemnitee was 'actively' or 'passively' negligent, the Court looks to the primary plaintiff's complaint. If that complaint alleges 'active' negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity." 297 N.W.2d at 842; *see also Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l.,* No. 16-CV-13168, 2018 WL 2087334, at *5 (E.D. Mich. May 4, 2018) (citing *Peeples*, 297 N.W.2d at 842). But *Peeples* is not saying that a motion to dismiss must be granted if the underlying plaintiff alleges *any* active negligence; it is

saying that a motion dismiss might be proper if the underlying plaintiff alleges *only* active negligence. The rule is stated more clearly in *Hill v. Sullivan Equipment Co.*: "If [the primary plaintiff's] complaint alleges *only* 'active' negligence, as opposed to derivative liability, the defendant is not entitled to common law indemnity." 273 N.W.2d 527, 529 (Mich. Ct. App. 1978) (emphasis added); *see also Int'l Indus. Contracting Corp.*, 2018 WL 2087334, at *5 (dismissing indemnification claim because "[n]one of the [primary] claims bases . . . liability on theories of vicarious liability or by operation of the law").

Here, THK's complaint against Lyden alleges several theories of "passive" negligence, including breaches of implied warranty. *See Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 344 (Mich. Ct. App. 2009) ("the implied warranties of merchantability and fitness for a particular purpose arise through implication by operation of law"). Thus, even if THK alleges that Lyden was actively negligent, Lyden is not prohibited from bringing an indemnification claim against Battenfeld.

Battenfeld also argues that the indemnification claim must be dismissed because indemnification does not apply where the underlying claims are based in contract. Battenfeld cites no law that sets forth such a rule. The cases that Battenfeld does cite are cases where the court discussed whether indemnification was available for a breach of contract claim alone. *See Schafer v. State Farm Mut. Auto. Ins.*, No. 08-13842, 2011 WL 1303139, at *5 (E.D. Mich. Mar. 3, 2011), *R. & R. adopted as modified,* No. 08-13842, 2011 WL 1258401 (E.D. Mich. Mar. 31, 2011) ("State Farm's liability, if any, is grounded in its contract with Plaintiff, not in any tort liability of Wolverine."); *Lawrence v. Grp. Admin. Agency, Inc.*, No. 223573, 2001 WL 1585286, at *2 & n.3 (Mich. Ct. App. Dec. 11, 2001) (indemnification not available where "the primary complaint alleged liability solely on the basis of contractual breach"); *Int'l Indus. Contracting Corp.*, 2018

WL 2087334, at *5 n.4 ("The Court is unaware of any authority allowing common-law indemnity for breach of contract claims . . . ."). Here, THK has alleged more than just a breach of contract claim against Lyden.

Therefore, the Court will deny Battenfeld's motion to dismiss Lyden's indemnification claim.

**B. Lyden's Contribution Claim**

Battenfeld argues that Lyden's contribution claim must be dismissed because common law contribution is unavailable under Michigan law and Lyden has not adequately pled the elements of a statutory contribution claim.

"The right to contribution in Michigan is controlled entirely by statute because there was no right to contribution at common law." *Miller v. Riverwood Recreation Ctr., Inc.*, 546 N.W.2d 684, 686 (Mich. Ct. App. 1996). Statutory contribution claims are controlled by Mich. Comp. Laws § 600.2925a, which provides that "when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." Mich. Comp. Laws § 600.2925a(1). But a right of contribution "exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability." *Id.* § 600.2925a(2). And because Michigan law generally requires that fault in tort actions be allocated in direct proportion to the person's percentage of fault, a tortfeasor usually does not have to pay more than his pro rata share of the liability. *See id.* § 600.2957(1). "Thus, to state a cause of action for contribution, plaintiff must show that: 1) common liability exists among the parties; and 2) the tortfeasor is exposed to greater liability for damages than would be its pro rata share." *Moisenko v. Volkswagen AG*, 10 F. Supp. 2d 853, 855 (W.D. Mich. 1998).

Battenfeld argues that Lyden has not pled a common liability that they both shared to THK. Lyden does not appear to contest this point. And the Court does not see a pleading of common liability in Lyden's complaint. Therefore, the Court will dismiss Lyden's contribution claim.

**C. Lyden's Breach of Contract Claim**

For a breach of contract claim, a plaintiff must plausibly plead "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

Battenfeld first argues that because it refunded Lyden for the allegedly defective grease, Lyden cannot plead it was damaged by any breach of contract. But Lyden is not just alleging damages from the amount of money it would have originally paid Battenfeld for the grease; Lyden is also alleging damages from, among other things, lost sales and revenue, lost profits, transportation costs, and labor costs arising from its sale of the grease to THK. And insofar as Battenfeld argues that Lyden's damages were not foreseeable, the Court disagrees; Battenfeld could foresee that delivering defective grease to Lyden could damage Lyden's business if that grease was then sold to another company and caused damage to that company's equipment.

Battenfeld's argument that Lyden must identify the specific term of the contract that was breached also fails. To state a breach of contract claim, Lyden only needs to plead that "there was a contract . . . which the other party breached." *Miller-Davis Co.*, 848 N.W.2d at 104. Lyden's complaint identifies the purchase order with Battenfeld for the 045 #3 grease and the related invoice as constituting the contract. (*See* Compl. ¶ 68.) Indeed, Battenfeld's briefing acknowledges that this was a valid contract. (Mot. to Dismiss Third-Party Compl. 16, ECF No. 35.) The manner of breaching that contract—which Lyden pleads here—is obvious: failing to fulfill the order with non-defective 045 #3 grease.

Therefore, the Court will deny Battenfeld's motion to dismiss Lyden's breach of contract claim.

**D. Lyden's Breach of Implied Warranty of Merchantability Claim**

"The warranty of merchantability requires that the goods sold be of average quality within the industry." *Vanalstine v. Land O'Lakes Purina Feeds, LLC*, 929 N.W.2d 789, 795 (Mich. Ct. App. 2018) (quoting *Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 55 (Mich. Ct. App. 2005); *see* Mich. Comp. Laws § 440.2314. Battenfeld argues that Lyden has failed to allege that the 045 #03 grease was not "of average quality within the industry" because it has not alleged there was a "market or industry" for the grease. (Mot. Dismiss 13.) But the two cases Battenfeld cites in support of its argument are not analogous to this one. In one, the Sixth Circuit reversed a grant of summary judgment to a plaintiff alleging a breach of implied warranty of merchantability because it was "difficult to imagine how . . . a standard of merchantability could have been determined" for a new type of component to be used in experimental machinery that had also never been operated before. *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 424 (6th Cir. 1981). And in the other, a district court granted summary judgment against a breach of implied warranty of merchantability claim because the court had essentially no evidence allowing it to determine whether the good at issue comported with industry standards. *PJ Wallbank Springs, Inc. v. Amstek Metal LLC*, No. 2:06-CV-15645, 2009 WL 2230752, at *12-*13 (E.D. Mich. July 22, 2009). For the purposes of overcoming a motion to dismiss, Lyden has adequately pled that the 045 #3 grease manufactured by Battenfeld did not adhere to standards of quality within the industry. After all, THK had been purchasing Battenfeld's grease (through Lyden) since at least 2018, and it was an unexpected failure of the grease to work properly that led to this action.

Battenfeld also reiterates the argument it made with respect to the breach of contract claim, that Lyden has not pled recoverable damages because Battenfeld provided a refund. This argument fails for the same reasons as noted above. *See* Mich. Comp. Laws § 440.2714(3) (providing, "[i]n a proper case," for recovery of incidental and consequential damages in breach of warranty cases).

### E. Lyden's Breach of Implied Warranty of Fitness for a Particular Purpose Claim

Michigan law provides that an implied warranty of fitness for a particular purpose where, in relevant part: "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Mich. Comp. Laws § 440.2315. Battenfeld argues that the allegations in Lyden's complaint cannot support this claim because they are mere "threadbare recitals of the elements, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678.

Lyden has plausibly pled a claim here. The complaint alleges: Battenfeld was aware that THK was using its grease and had in fact specifically developed the grease for use by THK (Compl. ¶ 16) Battenfeld knew that Lyden only purchased the grease for resale to THK *(id.* ¶ 15) Lyden relied on Battenfeld's skill and judgment as a manufacturer to provide grease suitable for THK's operations *(id.* ¶ 17) and that the grease was not fit for THK's operations because it was contaminated with foreign particles that damaged THK's equipment. (*Id.* ¶¶ 54, 71, 77, 87.)

### F. Whether Lyden's Breach of Contract and Implied Warranty Claims Are Proper Under Rule 14

Battenfeld also argues that Lyden's breach of contract and implied warranty claims should be dismissed because they are independent of THK's claims against Lyden, and therefore cannot be brought under Federal Rule of Civil Procedure 14.

Rule 14 allows a defendant to, "as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P.

14(a)(1). "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). "Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Id.*

Lyden's breach of contract and implied warranty claims are proper under Rule 14. THK's claims against Lyden all depend on the same central question: whether the grease that Battenfeld manufactured was defective. So do Lyden's claims against Battenfeld. Battenfeld's potential liability to Lyden therefore does depend on the success of THK's claims.

In any case, given that Lyden's indemnification claim can proceed under Rule 14, Lyden may also join its breach of contract and implied warranty claims under Rule 18(a). Fed. R. Civ. P. 18(a) ("A party asserting a . . . third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.").

**G. Lyden's Promissory Estoppel Claim**

Finally, Battenfeld argues that Lyden's promissory estoppel claim must be dismissed because Battenfeld has conceded the existence of a contract that covers the same claim. The Court agrees.

Promissory estoppel "substitutes for consideration in a case where there are no mutual promises," *Huhtala v. Travelers Ins.*, 257 N.W.2d 640, 647 (Mich. 1977). As a result, promissory estoppel does not apply where "the performance that satisfies the detrimental reliance requirement of the promissory estoppel claim is the same performance that represents consideration for the

written contract." *JPMorgan Chase Bank v. Transamerica Life Ins.*, No. 1:14-CV-918, 2015 WL 11439037, at *5 (W.D. Mich. June 17, 2015) (quoting *Gore v. Flagstar Bank*, 711 N.W.2d 330, 332-33 (Mich. 2006) (Kelly, J., dissenting)); *see also Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993), *aff'd,* 47 F.3d 1167 (6th Cir. 1995) ("If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract.").

Lyden alleges that Battenfeld "unconditionally promised" to deliver 045 #3 grease that would be "free of defects and work as intended for THK's manufacturing operations" and that it was damaged by Battenfeld's failure to fulfill this promise. (Compl. ¶¶ 92, 94.) But Battenfeld concedes in its briefing that it had a contract with Lyden to deliver 045 #3 grease (Mot. Dismiss 16) and, as discussed above, Lyden has plausibly pled that Battenfeld breached that contract by failing to provide non-defective grease. Whether under a theory of promissory estoppel or breach of contract, Lyden's claim arises from the same performance: Lyden's purchase of the grease from Battenfeld. Thus, Lyden's promissory estoppel claim must be dismissed.

## IV. Conclusion

For the above reasons, the Court will grant in part and deny in part Battenfeld's motion to dismiss. Lyden's contribution and promissory estoppel claims will be dismissed and Lyden's claims for indemnification, breach of contract, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose will remain in the case. An order will enter that is consistent with this Opinion.

Dated: November 4, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE